# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

VANESSA CHARLES,                              Case No. 1:11-cv-747
     Plaintiff,                            Barrett, J.
                                     Litkovitz, M.J.

     vs

COMMISSIONER OF                              **REPORT AND**
SOCIAL SECURITY,                             **RECOMMENDATION**
     Defendant.

     Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI).   This matter is before the Court on plaintiff's Statement of Errors (Doc. 14) and the Commissioner's memorandum in opposition (Doc. 15).

## I.  Procedural Background

     Plaintiff filed applications for DIB and SSI in July 2008, alleging disability since June 22, 2008, due to emphysema, high blood pressure, and a mass near her spine.   (Tr. 191).   Plaintiff's applications were denied initially and upon reconsideration.   Plaintiff, through counsel, requested and was granted a de novo hearing before Administrative Law Judge (ALJ) Samuel A. Rodner.   Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing.   On May 25, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] met the insured status requirements of the Social Security Act through June 30, 2010, but not thereafter.

2. The [plaintiff] has not engaged in substantial gainful activity since June 22, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: history of non-Hodgkin's lymphoma in full remission with no recurrence, status post chemotherapy; degenerative disc disease; and medication-induced dizziness (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: due to medication induced dizziness, the [plaintiff] should avoid concentrated exposure to unprotected heights or hazardous machinery.

6. The [plaintiff] is unable to perform any of her past relevant work (20 CFR 404.1565 and 416.965).[3]

7. The [plaintiff] was born [in] . . . 1960 and was 47 years old, which is defined as

---

[3]Plaintiff's past relevant work was as a mail handler and babysitter.  (Tr. 18).

a younger individual age 18-49, on the alleged disability onset date.   The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[4]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 22, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-20).

### C.   Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards.   *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

---

[4]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform at least 15,100 jobs in the local economy and 1,975,000 jobs in the national economy, citing jobs such as cashier, cleaner/housekeeper and packing line worker as examples.   (Tr. 19-20).

4

(1938)).   Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ."   *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole.   *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination.   Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right."   *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving

weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors

On appeal, plaintiff raises two assignments of error: (1) the ALJ improperly weighed the

medical opinions of record and rejected the opinions of plaintiff's treating physicians, and (2) the

ALJ erred in assessing plaintiff's credibility and subjective complaints of pain and other

symptoms.

### 1.  The ALJ did not err in weighing the medical opinions of record and rejecting the opinions of plaintiff's treating physicians.

Plaintiff argues that the ALJ failed to comply with the applicable Social Security

regulations and governing case law when he determined the weight to afford the various medical

opinions of record and rejected the opinions of her treating physicians, Dr. Frederick Goldman,

M.D., and Dr. Irfan Firdaus, D.O. Plaintiff argues that the ALJ did not provide legitimate reasons for giving "little weight" to the opinions of these treating physicians, and the ALJ made assumptions outside his area of expertise. Plaintiff contends there was no reliable evidence that contradicted her treating physicians' opinions. Plaintiff argues that the ALJ was not entitled to rely on the opinion of the state agency reviewing physician, Dr. Eli Perencevich, D.O., because he rendered his opinion "before significant developments occurred" and "before pertinent evidence was obtained." (Doc. 14 at 6-7). Plaintiff contends that although Dr. Perencevich's opinion was later affirmed by another reviewing physician, Dr. Elizabeth Das, neither physician "had the benefit of the more recent evidence submitted and the medical developments, namely the effects from Plaintiff's conditions that later developed." (Doc. 14 at 8). Plaintiff asserts that the "the state reviewing physician was not able to review MRI evidence nor the information from treating physicians which diagnose neuropathy." (Doc. 14 at 9). Plaintiff alleges that had such evidence been available to the reviewing physician, it could have changed his opinion as to her functional limitations.

The applicable regulations lay out the three types of acceptable medical sources upon which an ALJ may rely: treating source, nontreating source, and nonexamining source. 20 C.F.R. §§ 404.1502, 416.902. It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-530 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to substantially greater weight than the contrary opinion of a non-examining medical source. *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). If a treating

6

physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is entitled to controlling weight.   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)[1]; *see also Blakley*, 581 F.3d at 406; *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).   "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."   *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).   The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

If the ALJ does not give the treating source's opinion controlling weight, then the ALJ must consider a number of factors when deciding what weight to give the treating source's opinion.   20 C.F.R. §§ 404.1527(c), 416.927(c).   These factors include the length, nature and extent of the treatment relationship and the frequency of examination.   20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.   In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how

---

[1] 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012.   The provisions governing the weight to be afforded a medical opinion were previously found at 20 C.F.R. §§ 404.1527(d) and 416.927(d).

consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson*, 378 F.3d at 544. The ALJ must likewise apply the factors set forth in §§ 404.1527(c)(3)-(6) and 416.927(c)(3)-(6) when considering the weight to give a medical opinion rendered by a non-treating source. 20 C.F.R. §§ 404.1527(c), 416.927(c). When considering the medical specialty of a source, the ALJ will generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

The ALJ must give "good reasons" for the weight given the treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewer the weight given the treating source's opinion and the reasons for that weight. Social Security Ruling 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Here, the ALJ declined to give controlling weight to the opinions of plaintiff's treating physicians, Drs. Goldman and Firdaus. (Tr. 18). Dr. Goldman, plaintiff's primary care physician, completed a physical RFC questionnaire on November 16, 2009 (Tr. 628-31) in which he stated he had treated plaintiff for Non-Hodgkin's Lymphoma Stage IVB, and for a possible recurrence of the disease on November 9, 2009. (Tr. 628). Dr. Goldman opined that plaintiff could sit 8 hours, stand less than 1 hour, walk less than 1 hour, occasionally lift/carry 20 pounds, and occasionally bend, twist from side to side, and climb stairs. (Tr. 628-29). Plaintiff could use both hands for simple grasping but not for pushing/pulling or fine manipulation, and she could never use her feet and legs for repetitive movements. (Tr. 629-30). Plaintiff must avoid

8

unprotected heights, working around moving machinery, exposure to marked changes in humidity and temperature, substantial exposure to cold or rainy weather, and exposure to dust, fumes and gases. (Tr. 630). As support for the restrictions he imposed, Dr. Goldman explained that plaintiff has "significant neuropathy" in her hands and lower legs that interfere with her capabilities to stand or walk for extended time periods and the neuropathy in her hands significantly impairs her fine motor skills. (Tr. 631).

Dr. Firdaus, plaintiff's treating oncologist, stated in a one-page letter opinion dated October 25, 2010, that plaintiff had been diagnosed with Non-Hodgkin's Lymphoma Stage IVB with lung and possible kidney involvement on July 28, 2008. (Tr. 632). Dr. Firdaus stated that plaintiff had "tremendous response" to treatment and "excellent response" to treatment for spinal involvement that had developed early in her treatment. (Id.). Dr. Firdaus stated he had treated plaintiff every three months for the past two years and scans were performed to check for any reoccurrence of her disease. Dr. Firdaus asserted that plaintiff had developed "extensive neuropathy" in her hands and feet from her treatments and that her pain was controlled with Lyrica and narcotics. (Id.). Dr. Firdaus opined that plaintiff's "neuropathy and narcotic use for pain control makes her a high risk for injury and unable to produce consistent work efforts that would support gainful employment." (Id.).

A review of the ALJ's decision shows that the ALJ gave valid reasons for declining to give controlling weight to the opinions of plaintiff's treating physicians and to instead give Dr. Goldman's opinion "reduced weight" and Dr. Firdaus's opinion "little weight." (Tr. 18). First, the ALJ found Dr. Goldman's opinion was not well-supported by the objective medical evidence of record and was not "consistent with the substantial evidence of record." (Id.). The ALJ

9

noted that while Dr. Goldman based his November 2009 opinion solely on purported neuropathy and the possible recurrence of Non-Hodgkin's Lymphoma, there was no objective evidence of either condition as of that date. (*Id*.). The ALJ further determined that plaintiff's course of treatment with Dr. Goldman was not consistent with the treatment an individual would receive if truly disabled as the record showed that prior to the date of his November 2009 assessment, Dr. Goldman had last treated plaintiff a year earlier in late 2008. (*Id*., citing Tr. 372-74).

Second, the ALJ discounted Dr. Firdaus's opinion dated October 25, 2010, that plaintiff's neuropathy would prevent consistent gainful employment because Dr. Firdaus's physical examinations performed on August 13, 2010 and January 7, 2011 were normal. (*Id*., citing Tr. 653-78). The ALJ also gave Dr. Firdaus's opinion "little weight" because Dr. Firdaus failed to provide a functional assessment of plaintiff's work-related abilities and instead rendered a conclusion that plaintiff could not engage in gainful employment, which the ALJ noted is a determination for the Commissioner to make. (*Id*.).

The ALJ's decision as to the weight to afford the opinions of plaintiff's treating physicians finds substantial support in the record. Dr. Goldman does not list any clinical findings, laboratory diagnostic techniques, or other objective medical findings to support his opinion that plaintiff's Non-Hodgkin's Lymphoma had possibly reoccurred as of November 2009 or to support his opinion that plaintiff suffered from debilitating neuropathy that imposed the limitations he found. Moreover, the ALJ was entitled to discount Dr. Goldman's opinion based on his course of treatment of plaintiff as the record contains office notes from Dr. Goldman for only a brief three-month period from August to November 2008 (Tr. 342-44), which was shortly after plaintiff was diagnosed with Non-Hodgkin's Lymphoma in July 2008 (Tr. 732). *See* 20

10

C.F.R. §§ 404.1527(c), 416.927(c) (factors to be considered in determining weight to give treating source's opinion include length, nature and extent of treatment relationship and frequency of examination).

In addition, the ALJ correctly noted that Dr. Firdaus's examinations closest in time to his October 25, 2010 opinion that plaintiff is unable to engage in gainful employment due to neuropathy and narcotic use do not support his opinion in that there is no finding of neuropathy on physical examination, nor is there a diagnosis or report of neuropathy or side effects from narcotics in those treatment notes. (Tr. 661-1/7/11; Tr. 662-8/13/10). In addition, while plaintiff complained of "some worsening neuropathy in her hands and feet" in August 2009 (Tr. 668), the subsequent office notes from her treating oncologist fail to document that neuropathy was an ongoing problem. (Tr. 640, 648-49, 661-67). The ALJ further properly discounted Dr. Firdaus's opinion that plaintiff is unable to engage in gainful employment on the ground that the determination of whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion that his patient is disabled is not "giv[en] any special significance." 20 C.F.R. §§ 404.1527(d), 416.927(d). *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted).

Finally, as shown by the ALJ's thorough review of the medical evidence of record related to plaintiff's Non-Hodgkin's Lymphoma and complaints of neuropathy (Tr. 16), substantial evidence supports the ALJ's decision as to the weight to give the opinions of plaintiff's treating physicians. (Tr. 16). The ALJ found that repeated diagnostic tests documented no evidence of

11

recurrent Lymphoma. (*Id.*, citing Tr. 476-77, 623, 633, 649, 664). The ALJ further determined that despite plaintiff's allegations of severe neuropathy secondary to her chemotherapy, she had not seen a neurologist; she had not undergone an electrodiagnostic test; and there was no objective evidence either by clinical signs or laboratory findings to substantiate Drs. Goldman and Firdaus's statements that plaintiff has severe peripheral neuropathy in her hands and feet (Tr. 633-52, 661-62, 669). In addition, the ALJ reasonably considered that a neurological examination performed during an evaluation at Good Samaritan Hospital on February 15, 2011, revealed no abnormalities. (*Id.*, citing Tr. 633). Further, when plaintiff treated with a hand specialist, Dr. Peter Stern, M.D., plaintiff made only brief mention of neuropathy and Dr. Stern documented no substantial evidence of hand, wrist or finger impairment apart from "de Quervain's [tenosynovitis][2]," which was resolved following surgery in January 2010. (*Id.*, citing Tr. 731-36). The ALJ gave "good reasons," supported by substantial evidence, in weighing the opinions of plaintiff's treating physicians.

Instead of giving controlling weight to the opinions of the treating physicians, the ALJ placed "great weight" on the assessments of the non-examining state agency reviewing physicians, Drs. Perencevich and Das, in finding that plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: due to medication induced dizziness, the [plaintiff] should avoid concentrated exposure to unprotected heights or hazardous machinery. (Tr. 14).

(Tr. 17, citing Tr. 468-75, 626). Dr. Perencevich completed a physical RFC assessment on February 19, 2009, in which he found that plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; stand/walk about 6 hours in an 8-hour workday; and sit about 6

---

[2] De Quervain's tenosynovitis is inflammation of the tendons on the side of the wrist at the base of the thumb. http://www.medicinenet.com/de_quervains_tenosynovitis/article.htm (last accessed December 7, 2012)

hours in an 8-hour workday. (Tr. 469-72). Dr. Perencevich imposed no other functional

limitations. Dr. Perencevich opined that plaintiff's allegations were credible given that at the

time of her application in July 2008, she had just begun treatment for Non-Hodgkin's Lymphoma

and the level of pain and limitation she described could reasonably be expected, but he noted that

as of the date of his report she was reportedly doing much better. (Tr. 473).

Dr. Das affirmed the assessment on reconsideration on October 7, 2009. (Tr. 626). Dr.

Das noted plaintiff's subjective complaints of numbness and joint paint and stated that according

to plaintiff, her doctor had informed her that these symptoms could be attributable to neuropathy

from plaintiff's previous chemotherapy. (*Id.*). Dr. Das also noted plaintiff's complaints of back

pain, but Dr. Das stated that an MRI completed since the last decision was PET negative

according to the treating source. (*Id.*). Dr. Das stated that the medical evidence of record

showed no signs of recurrent lymphoma, and a physical examination performed in June 2009 did

not show any significant changes that would alter the previous decision. (*Id.*).

Plaintiff argues the ALJ erred by giving "great weight" to the opinions of Drs.

Perencevich and Das because these physicians did not consider plaintiff's MRI results and

neuropathy diagnosis, which could have changed their opinions. (Doc. 14 at 8-9). Contrary to

plaintiff's argument, Dr. Das's reconsideration determination specifically references plaintiff's

MRI results (Tr. 626) and plaintiff fails to point to any subsequent imaging studies or clinical

findings that would justify greater limitations than those imposed by Drs. Perencevich and Das.[3]

Dr. Das also acknowledged a possible neuropathy diagnosis (Tr. 626), and plaintiff likewise fails

to point to objective findings related to her neuropathy that either Dr. Perencevich or Dr. Das

---

[3] The ALJ nonetheless went beyond the limitations imposed by Dr. Perencevich and added a restriction to avoid
concentrated exposure to unprotected heights or hazardous machinery in order to account for plaintiff's subjective

13

failed to consider. As explained above, the ALJ thoroughly reviewed the medical evidence of record, including the evidence post-dating the assessments of Drs. Perencevich and Das, and his review demonstrates a lack of objective evidence documenting plaintiff's allegations of severe neuropathy. (Tr. 16). For these reasons, plaintiff has not shown that the ALJ erred by assigning "great weight" to the opinions of Drs. Perencevich and Das.

The regulations provide that an ALJ should give more weight to an opinion that is consistent with the record as a whole. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). A review of the medical evidence of record demonstrates that the opinion of Dr. Perencevich, as affirmed by Dr. Das, is consistent with the record as a whole and supports the ALJ's decision. The ALJ reasonably determined that the opinions of Drs. Goldman and Firdaus were not entitled to controlling weight, and his reasons for giving these opinions "little" or "reduced" weight find substantial support in the record. (Tr. 18). Accordingly, plaintiff's first assignment of error should be overruled.

### 2. The ALJ did not err in assessing plaintiff's credibility and subjective complaints.

Plaintiff contends that the ALJ failed to conduct the credibility analysis required under the Social Security rules and regulations, so that the ALJ's credibility determination is not supported by substantial evidence. (Doc. 14 at 9-13). Plaintiff asserts that the ALJ did not conduct the required two-part analysis for evaluating her subjective symptoms and failed to take the relevant factors into consideration. (*Id.* at 10-11, citing Tr. 17). Plaintiff contends that the ALJ improperly discounted her credibility based on the conservative care she has received and her work history; he inappropriately attributed the fact that she was not working to factors other

---

complaint of dizziness.

than her alleged disability; and he failed to analyze the consistency of her statements. (*Id.* at 12-13). Plaintiff argues that her underlying conditions and symptoms can reasonably be expected to produce the symptoms she described and the objective evidence confirms her allegations of "chronic pain, fatigue and dizziness, etc." (*Id.* at 12). Plaintiff contends that the findings and opinions of the treating physicians that her symptoms preclude all work activity on a sustained basis, together with the opinion of the state agency reviewing physician Dr. Perencevich that her allegations were credible, support her complaints and show that the ALJ's credibility assessment is not supported by substantial evidence. (*Id.* at 12).

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability. . . ." 42 U.S.C. § 423(d)(5)(A). Subjective complaints are evaluated under the standard set forth in *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. *Id.* at 853. If there is, the Commissioner must then determine: (1) whether the objective medical evidence

15

confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id.*

In addition to the objective medical evidence, the Commissioner must consider the opinions and statements of the plaintiff's doctors. *Felisky*, 35 F.3d at 1040. Additional specific factors relevant to the plaintiff's allegations of pain include her daily activities; the location, duration, frequency and intensity of her pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes to alleviate her pain or other symptoms; treatment other than medication plaintiff has received for relief of her pain; and any measures the plaintiff uses to relieve her pain. *Id.* at 1039-40; 20 C.F.R. §§ 404.1529(c), 416.929(c). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish that she is disabled, *Duncan,* 801 F.2d. at 853, statements about her pain or other symptoms are not sufficient to prove her disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id.*

Here, the ALJ's credibility determination is substantially supported by the record and is entitled to deference. Contrary to plaintiff's allegation, the ALJ made extensive findings regarding her credibility in connection with his determination that plaintiff retained the RFC to perform light work with restrictions to account for her subjective complaint of dizziness. (Tr. 14-17).

16

The ALJ determined that although plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the symptoms were not credible.[4]  (Tr. 15-16).  The ALJ reasonably determined that plaintiff's allegations of severe pain, especially in her back and hands, were not supported by the objective evidence.  (Tr. 16).  The ALJ reasonably discounted plaintiff's allegations of severe neuropathy based on a lack of objective findings as discussed in connection with plaintiff's first assignment of error.  (Tr. 16).  The ALJ also found no diagnostic or clinical evidence to support plaintiff's complaints of radiating back pain.  (*Id.*, citing Tr. 404, 541-42, 623, 643, 648, 649).  Plaintiff asserts that the ALJ erred in rendering these findings because the "objective evidence confirms [her] allegations of chronic pain, fatigue, dizziness, etc."  (Doc. 14 at 12).  However, plaintiff does not point to objective findings in the record that confirm her subjective complaints and show her medical impairments are so severe they could reasonably be expected to produce disabling pain, fatigue, or other symptoms.  To the contrary, as evidence she suffers from disabling pain and other symptoms, plaintiff relies largely on her own subjective complaints to her treating physicians (Doc. 14 at 12), who in turn appear to have relied exclusively on these complaints when issuing their assessments.  (Tr. 628-31; Tr. 632).  Such subjective evidence does not satisfy the two-part *Duncan* test and cannot alone support a finding of disability.  *Duncan*, 801 F.2d at 852; 20 C.F.R. §§ 404.1529(a), 416.929(a). The ALJ reasonably relied on the lack of objective findings, such as gait abnormalities, decreased range of motion, muscle weakness, diminished sensation, and neurological deficits, to find that plaintiff's complaints of severe neuropathy, back and hand pain, and radiating back pain were not

---

[4] The ALJ accounted for plaintiff's subjective complaints of dizziness in the RFC by restricting her from exposure to unprotected heights or hazardous machinery.  (Tr. 14).

17

credible. *See Jones v. Secretary, Health and Human Services*, 945 F.2d 1365, 1369-1370 (6th Cir. 1991) (reliable objective evidence of pain includes medical evidence of muscle atrophy, reduced joint motion, muscle spasm and sensory and motor disruption).

Moreover, in addition to the lack of objective evidence, the ALJ reasonably relied on a number of other factors that he found were inconsistent with plaintiff's allegations of disabling impairments and pain to find plaintiff's complaints were not credible. (Tr. 16-17). The ALJ noted that plaintiff had failed to mention back pain as an ongoing problem at a number of office visits (Tr. 16, citing Tr. 661-62), she has received conservative care, and she does not require a cane or other type of ambulatory assistance. (Tr. 17). In addition, the ALJ reasonably determined that plaintiff's ability to care for her two-year old great-nephew, over whom she had been granted legal custody, cast doubt on plaintiff's "extreme" allegation that she must take three daily one-hour naps to alleviate her pain and confirmed that plaintiff is not as functionally limited as she alleged. (*Id.*). The ALJ also reasonably relied on plaintiff's reports of her daily activities – specifically, she performs household chores, washes dishes manually on a daily basis, prepares meals daily, and shops alone - which he found were inconsistent with her allegations of disabling pain. *See Blacha v. Secretary of Health and Human Servs.,* 927 F.2d 228, 231 (6th Cir. 1990) (the ALJ may consider the plaintiff's household and social activities in evaluating the plaintiff's credibility).

Finally, a review of the ALJ's decision shows the ALJ did not improperly discount plaintiff's credibility based on her work history as plaintiff alleges. (Doc. 14 at 12-13). The ALJ noted that it was difficult to judge plaintiff's work history because F.I.C.A. taxes were not withheld from her pay during her employment with the U.S. Postal Service, but the ALJ did not

18

indicate that this administrative matter detracted from plaintiff's credibility.  (Tr. 17).  The ALJ

further noted that plaintiff had stopped working more than a year before her alleged onset date

because she had been laid off, but he deduced from this only that her employment had ended for

reasons unrelated to her alleged impairments.  (*Id.*).  Thus, the ALJ's decision does not show

that he improperly discounted plaintiff's credibility based on an unreasonable analysis of her

work history.

Accordingly, the ALJ properly applied the two-part *Duncan* standard in evaluating

plaintiff's subjective complaints of pain and other purportedly disabling symptoms.  The ALJ

conducted a thorough evaluation of plaintiff's complaints in light of the objective medical

evidence of record, her reported daily activities, and other pertinent factors.  Substantial

evidence supports the ALJ's determination based on the medical and other evidence of record

that plaintiff does not suffer from disabling pain and other symptoms.  Plaintiff's second

assignment of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be AFFIRMED and this matter be closed on the

docket of the Court.

Date: _12/20/12_

Karen L. Litkovitz
United States Magistrate Judge

19

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

VANESSA CHARLES,
    Plaintiff,

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:11-cv-747
Barrett, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).